## SMITH v. CHAMBERLAIN.[1]

1. SEPARATION OF RACES—AGENT'S REGULATIONS—PLEADING.—Under a com-

[1]The subject of the rightful separation of the two races on railroad cars is treated at length in a note to *Ex parte* Plessy, 18 L. R. A., 639. See, also. Chilton *v.* St. Louis, &c., R. R. Co., 19 L. R. A., 269.—REPORTER.

plaint by a colored woman against the receiver of a railroad corporation for the rude and violent removal of plaintiff by defendant's agent from a room in one of defendant's depots, assigned for the use of ladies, to another room assigned for the use of men, the defendant, under a general denial, may prove a regulation of the agent under which the first room was reserved for the use of white passengers. The Code does not recognize special pleas.

2. IBID.—IBID.—Under the statute which requires the railroad corporation to furnish two convenient rooms at every ticket station for the comfortable accommodation of passengers, and declares the agents at these stations to be conservators of the peace, such agents, without special direction from the company, may publish and enforce a regulation assigning two rooms of equal accommodation to white and colored passengers respectively.

3. IBID.—EQUAL ACCOMMODATIONS.—The trial judge did not err in charging the jury that the fact, that chewing and smoking had been practiced in the room for colored people and not in the other room, was not conclusive proof that the accommodations in the two rooms were not substantially equal, if no chewing or smoking were going on at the time of plaintiff's removal.

Before IZLAR, J., Aiken, April, 1891.

This was an action by Rebecca Smith and her husband against D. H. Chamberlain, receiver of the South Carolina Railway Company, commenced February 24, 1891. The judge charged the jury as follows:

*Gentlemen of the jury:* This case has consumed considerable time, but no more time, however, than its importance demands, and it becomes your duty and mine now, to perform our respective parts in this trial. It is my duty to give you the law in this case as I understand it, and it is your duty to find the facts in this case under the testimony as you have heard it, and apply the facts to the law as I have given it to you, and then find your verdict. In the consideration of this case, you will eliminate from your minds altogether that one party to this transaction was white or black, except so far as it becomes necessary to consider it in connection with certain portions of the testimony, and you will, at the same time, in making out your verdict in this case, not find a verdict against the corporation because it is a corporation, or against Daniel H. Chamberlain because he happened to be the defendant in this case. The

real defendant in this action is the South Carolina Railway Company. So, in considering this matter, you will consider it just as you would any other case which is brought before you. Give full weight to the testimony, give full heed to the laws as the Court shall give it to you, and then find your verdict.

This action is brought by Rebecca Smith, plaintiff, against Daniel H. Chamberlain as receiver of the South Carolina Railway Company, to recover damages for being, as she alleges, forcibly and unlawfully ejected from the ladies' room of the station house at Graniteville, on the line of said railway, by the agent of said company, where she had gone to purchase a ticket for the purpose of becoming a passenger on the trains run by said company.

The gist of her action is shown in the fifth paragraph of the complaint, which I will read to you: ''That while the plaintiff, Rebecca Smith, was in the passenger room of said depot, she applied to one Fishburne, agent of said defendant, to purchase a ticket from Graniteville to Aiken, but he refused to sell her a ticket, and ordered the plaintiff to go in the room allotted to male passengers; and upon plaintiff's refusal to do so, the said agent came into said room and approached the plaintiff, and unlawfully, in a rude and violent manner, ordered the plaintiff, Rebecca Smith, to get out of said room, and on her refusal to leave, caught hold of her and entered into a tussel with said plaintiff; and finally, in a rough, unlawful, and violent manner, pulled and forced the said plaintiff to leave said room, and at the same time inflicting bruises and injuries upon said plaintiff which caused her pain and suffering.'' Now the gist of her action is contained in that allegation of plaintiff's complaint. The defendant denies all the material allegations of the complaint respecting the forcible and unlawful ejection of the plaintiff.

Thus the main issues of the case are clearly presented, and I hold that, under a general denial, where the plaintiff alleges that she was unlawfully ejected, the defendant may give in evidence any testimony tending to show that such ejectment was not unlawful, even a known rule of regulation, not as a justification of the act, but as responsive to the issue, and in

rebuttal of the allegation of unlawful ejectment. It is true, that some testimony has been brought out in the hearing, tending to show a discrimination against the plaintiff on account of color—she being a colored woman. This testimony was admitted without objection; but I do not think it was responsive to any allegation in the complaint, or any issue raised by the pleadings. The plaintiff, in her complaint, does not complain that she was discriminated against on account of color. Her cause of action, as set forth in her complaint, grows out of the alleged fact that she was forcibly and unlawfully ejected from the ladies' waiting room, where she had gone to purchase a ticket, for the purpose of becoming a passenger on the railway of said company.

Now, when a railroad company holds itself out to the traveling public as a carrier of passengers, persons desiring to travel on the line of such railway have a right to enter the ticket office provided by such company for the purpose of procuring tickets, and to occupy the waiting rooms provided until the arrival of the trains. But while they have this right, they must, while there, conduct themselves with decency and propriety. They can not, because of the right accorded them by law, use the privilege so as to abuse it. They can not take advantage of the privilege to disturb and annoy others who go there with like purposes and under like privileges. If, while there, one should become boisterous, abusive, or indulge in profanity, or open obscenity, or other disreputable conduct, to the annoyance and discomfort of others, it would not only be right and proper for the agent to eject such person, but it would be his duty to do so, and, in doing so, he would be justifiable under the law, provided he did not use more force than was necessary for the purpose. Every railroad agent in this State is, within certain limits, a conservator of the peace, and is clothed with authority to arrest all disturbers and breakers of the peace, and those who are there violating the reasonable rules and regulations established for protection, convenience, and safety of the traveling public, and those interfering with the business of the agent.

It may become necessary, in view of the testimony intro-

duced in this case, that I should say something in regard to discrimination on account of color. Among the citizens of South Carolina we have two distinct races. Before the law they are equal. The colored race, in our courts of justice, stand on the same plane as the white race. Our laws bear equally upon all, without regard to race, color, or previous condition. Our social conditions, however, are very different. Friends, companions, and neighbors must be of our own choice. These relations and associations the law does not undertake to make or regulate for us. If we do not wish to associate with one class of society, there is no law that I know of which compels us to do so. Under the law, however, there can be no discrimination. There can not be one law for the white man and another for the black man. All laws must be made so as to bear equally, and to protect and punish alike all citizens of a common State or common community.

But while this is so, we have the question presented, is it discriminating against the colored race to provide a waiting room at a railway station for the whites and another for the blacks, and to require each to purchase their tickets at a place provided for that purpose, if both rooms are of equal comfort and equal accommodations are provided? My view of the law is, that this would not be an act of discrimination; both races would, under these circumstances, be treated exactly alike, though it might be in different rooms. The same regulations or rules would bear equally upon both. The same comforts would be extended to both. While I give you this as the law, yet it is for you to say from the evidence in the case, whether or not the accommodations provided by the South Carolina Railway Company at the Graniteville station for the whites and blacks on the occasion when the plaintiff claims to have been forcibly and unlawfully ejected from the waiting room were substantially equal. If the preponderance of the evidence satisfies you that the accommodations provided were not substantially equal, then I charge you that a refusal to sell the plaintiff a ticket in that room by the agent, on account of her color alone, would be an act of discrimination; but if otherwise, it would not be. I submit this question of fact to

you; you must solve it by the preponderance of the evidence. I can do no more than give you the law as I understand it.

I do not think, that in making provision at the railroad depot for the accommodation of the traveling public, where two rooms are provided, one for the colored and one for the whites (I am not speaking of this case now, but generally,) and I say, that where the accommodations are substantially equal, and require persons of these different classes to go into these respective rooms to purchase their tickets, would be an act of discrimination, but I do not think that exact equality in every respect would be required, but only a substantial equality in this accommodation. Now, one room might have upon it a nob lock and the other a pad lock, and to come down to exact equality, I don't think it would be reasonable, and the law don't intend it. The accommodations, however, must be substantially equal; and I further charge you, that a regulation of that kind, in case you should come, in this case, to the conclusion that there was such a regulation existing at that place, I don't think that a regulation of that kind would be unreasonable. I can see very good reasons why it would be otherwise.

The next question to which I would call your attention is as to the authority of the agent to make reasonable regulation, in case you come to the conclusion from the evidence that such regulation was made and enforced by him. The agent of a railway company has the authority to make such reasonable regulation as may be necessary for the dispatch of his business, the comfort, order, convenience, and safety of the traveling public at his station, and general police of the place, so far as the same is necessary to prevent annoyance to and unlawful interference with those who go there for lawful purposes. This much, at least, is not only expected, but required of him. But here again you must determine whether or not such regulation was made, and, if made by the agent, whether under all the circumstances it was a reasonable regulation at that station. For what might be a reasonable regulation under certain circumstances, might be very unreasonable under other circumstances, and what might be reasonable at one

time and place, might not be reasonable at another time and place. Such regulation ordinarily, I would say, would be a reasonable regulation.

A railway company necessarily acts through its agents, and is liable for all their acts within the range of its charter powers. It is even liable for the wilful torts of its agents committed within the general scope of their employment, and it makes no difference that the act was without the knowledge of the master, or even in disobedience of his orders. So, if the company's agent on this occasion wilfully and without excuse refused to sell the plaintiff a ticket, and wrongfully and forcibly ejected her from the waiting room at the Graniteville station, the company would be liable not only for the actual damage which she suffered, if the testimony satisfies you that she suffered actual damage, but also for exemplary damages. Exemplary or punitive damages, as they are sometimes called, "are damages which the jury is authorized to give over and above the money value they put on the plaintiff's injury by reason of some misconduct on the part of the defendant, and which the jury is authorized to give, so as to teach the defendant to behave better in the future." This class of damages is not only for the protection of plaintiff but also of the public.

The principle is well established, that where an agent is employed to do the work of the master he is the representative of the master, and any wrong, oppression or misconduct on his part in the performance of the duty of the master thus delegated to him must be regarded as that of the master, and, in one case, our Supreme Court affirmed a judgment of the Circuit Court, where the Circuit Judge in his charge said that, although there may have been no wilful design on the part of the corporation or any of its agents to injure the plaintiff, nevertheless, the jury might find exemplary damages. I have been requested by the counsel for the plaintiff in this case to charge you the following requests:

"*First.* That the rule of the agent Fishburne cannot bind the public, unless the jury believe from the evidence that the same was made by or sanctioned by the railroad company or

the receiver, as a rule of the corporation or its receiver." I cannot so charge you.

"*Second.* That there is no evidence in this case that said rule, alleged to have been made by the agent Fishburne, was made by or sanctioned by the railroad company or its receiver." I refuse to charge you that, because it would be inconsistent with what I have already charged you.

"*Third.* That if the jury believe from the evidence that the receiver of the railroad company had not established a rule respecting its white and colored passengers, that then the plaintiff had a right to enter the room assigned to female passengers for the purpose of buying a ticket, and if while in that room for that purpose, it was unlawful to expel her on account of her color." As a general proposition, that is good law, in case you come to the conclusion that such a regulation had been established. If such a regulation was established, and you come to that conclusion from the testimony, I would say that it does not apply; but in case you come to the conclusion from the testimony that there was no such rule, why, of course, she was lawfully in there.

"*Fourth.* That the plaintiff had the legal right to enter the room at the depot assigned to female passengers for the purpose of purchasing a ticket, and awaiting the arrival of the train on which she expected to take passage, and if while in said room for said purpose she conducted herself in an orderly manner, the defendant could not lawfully expel her. And if the jury find that the plaintiff entered said room for said purpose, and while in there her conduct was orderly, and if she was expelled therefrom, such expulsion was unlawful, for which the defendant is liable." I charge you that that is good law, in case you find that the room had been assigned for female passengers. That you must decide yourselves from the evidence, whether or not there was any particular room assigned for the females to purchase their tickets, and she was in that particular room. "And if the jury find that she entered such room for such purpose," and while in there to buy a ticket was orderly, and she was expelled therefrom, I should say she was unlawfully expelled therefrom. "Such expulsion was unlawful, for which

the defendant is liable." Well, that would depend altogether, it seems to me, upon the conclusion which you might come to in regard to whether a room had been assigned for particular persons of this class to purchase their tickets at that place, or whether females of all classes were allowed to go into one room and there purchase their tickets. If a room had been assigned to females of all classes to purchase their tickets, and she was in that room lawfully, and conducting herself properly, why, the agent would have had no right to force her out and eject her, if she was conducting herself properly while there.

"*Fifth.* The defendant is responsible for all acts of his agent done in the course of his employment, and it makes no difference that the agent acted against the rules of the defendant company.

"*Sixth.* If the jury should find that the conduct of the agent was rude, insulting, and oppressive towards the plaintiff, then the jury may give such damages as would compensate plaintiff for her injured feelings and the indignities placed upon her, and, also, exemplary damages, such reasonable amount as would punish the defendant for the wrong done." As general propositions of law, I think that these are correct.

"*Seventth.* If the jury should find that the plaintiff was expelled from the depot, and that such expulsion was unlawful, and the agent's conduct was oppressive, malicious, and recklessly disregardful of the plaintiff, or insulting or unnecessarily rude and violent, the jury may go beyond the actual amount of damages done the plaintiff, and give such amount as they think she ought to have, not only to compensate her, but to punish the defendant for such conduct." I have in effect charged you that already. It is admitted by the other side as good law.

The defendant also requests that I should charge:

"*First.* That if the jury find from the evidence that Fishburne, as agent of the defendant, was in entire charge of the depot at Graniteville, then as such agent he had the right to establish all reasonable rules and regulations for the government of the depot and its surroundings." I have in effect charged you that.

"*Second.* That if the jury find from the evidence that said agent established a rule or regulation by which a certain window was set apart, from which white people were to obtain tickets, and another from which colored people were to obtain tickets; and a certain room was set aside for white people and another for colored people; and if they further find that equal accommodations were given to one class as to the other; and that in the reasonable enforcement of said rule the said agent ejected the plaintiff from the depot, using in so doing no more force than was necessary, then the verdict must be for the defendant." I will charge you that, modified to this effect: that if the plaintiff here had knowledge of the fact that such was the rule, then that would be a good proposition of law, as I understand the law; but if she had no knowledge of the rule, and went into that place believing that that was the place, up to that time, of course, there would have been no violation of the law, and it is for you to say from the evidence which you have heard, whether or not she had knowledge of the rule.

"*Third.* That according to the statute law of this State, station or depot agents of railroad companies are made conservators of the peace in and about their respective places of business, and if the jury find in this case that Fishburne was such agent, then he was such conservator of the peace at such place, and had the right, using no more force than was necessary, to eject the plaintiff from the depot, if the jury find that she refused to leave after request, and was guilty of conduct which tended to disturb the peace and quiet of other parties rightfully in the depot, or to interfere with the business of the agent." I have already charged you in effect that request, and you have heard the statute law I intended to read to you in regard to the agents at depots along the lines of the railways in this State. It has been read to you, and that they are conservators of the peace, and what authority they have at their respective depots. There is also a statute in regard to waiting rooms at their respective stations read to you. The act, as I understand it, requires that the company shall provide at the station two rooms; but there is no direction by statute, as I understand it, how those rooms shall be used. They are to be provided with comforta-

ble seats for the accommodation of those who go there to take the trains, and are to be substantially equal, and, as I have already charged you, that if such a regulation was made at the depot requiring one class of persons, either male or female, or one class of citizens, either white or colored, to purchase their tickets in those respective rooms, why it would be no act of discrimination.

Now, you are to take this case and consider the testimony, and I urge upon you, notwithstanding the lateness of the hour, that you will give due consideration to all of the testimony which you have heard, and apply it to the law as I have given it to you. I trust that I have made myself plain in endeavoring to read these requests; I may have got the matter a little mixed, but I think you can understand what is the law of this case from what I have already said. It is an important case, as I stated at the outset, and deserves due consideration on your part. If you are satisfied, from the testimony, under the law as I have given it to you, that the plaintiff is entitled to a verdict in this case, why, you can find any amount of damages from one cent up to fifteen hundred dollars—I believe that is the amount contained in the complaint; you can not go, however, beyond what is contained in the complaint. If, however, you come to the conclusion, from the evidence which you have heard, that this party has failed to sustain the allegations of her complaint, and that is the foundation and cause of her action, and that she was not unlawfully and forcibly ejected from that railroad station, why, then your verdict would have to be for the defendant.

*Mr. Croft:* I would like for you to charge, "If smoking and chewing was allowed in one room and not in the other, it would not be equal." *The Court:* I would not say there would be equal accommodation for both, if smoking and chewing or cursing were allowed in one room and not in the other. *Mr. Henderson:* During the time this was going on? *The Court:* Yes, during the time she was there; and you are to decide whether any chewing or smoking or cursing was going on in that room at that time.

*Messrs. Croft & Chafee,* for appellants.

*Messrs. Henderson Bros.*, contra.

March 29, 1893.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   The plaintiffs are husband and wife, and they brought this action for damages to the plaintiff, Rebecca Smith, for having been, as alleged, wrongfully ejected from the "waiting room" of the South Carolina Railway at Graniteville, S. C.   The following is a condensed statement of the allegations of the plaintiffs: On September 13, 1890, the plaintiff, Rebecca, being at Graniteville, and desiring to take passage on a passenger train for Aiken, S. C., went into the passenger room, at the Graniteville depot, commonly occupied by lady passengers while waiting the arrival of trains over said railway, for the purpose of purchasing a ticket to Aiken; that she approached the window in said room where tickets were sold, and asked the agent, Fishburne, for a ticket to the desired destination; that the said agent refused to sell her a ticket, and ordered her out of the room, into one commonly occupied by male passengers.   Said plaintiff refused to go into said room, and, upon her refusal so to do, the said agent, Fishburne, proceeded, in a rough and violent manner, to eject her from said waiting room, &c.

The defendant answered, admitted that he is receiver of the South Carolina Railway Company, appointed by the Circuit Court of the United States, and denied each and every other allegation of the complaint.   2. For a second defence: That the court has no jurisdiction to try this action, the defendant being a receiver appointed by the United States Circuit Court, and this action ought to have been brought therein, and ought to be transferred thereto.   3. For a third defence: That the Court of Common Pleas for Aiken County has no jurisdiction to try this action, because said county is not the residence of the defendant, who resides in the County of Charleston, &c.

The cause came on for trial before his honor, Judge Izlar, and a jury.   Both sides made requests to charge, some of which were charged, some were refused, and others were modified. But it will not be necessary to notice any of them, except those to which objection is made in the exceptions of the plaintiffs.

The whole charge of the judge ought to appear in the report of the case. The jury, under the judge's charge, found for the defendant, and the plaintiffs appeal on these grounds:

1. That his honor erred in permitting the witness, Fishburne, to testify as to there being a rule which assigned separate rooms to the white and colored persons at the Graniteville depot, such evidence not being responsive to the issue contained in the pleadings, and being in the nature of a defence of "confession and avoidance," could not properly be considered by the jury under the pleadings.

2. Because a rule separating white and colored persons in different rooms at the depot could not be made by the station agent at the depot, unless it was also shown that such rule was adopted by the defendant, and his honor erred in ruling that such a rule could be proved simply by showing that the depot agent at Graniteville had established the same.

3. Because his honor, the presiding judge, erred in charging the jury, "that under a general denial, when the plaintiff alleges that she was unlawfully ejected, the defendant may give in evidence any testimony tending to show that such ejectment was not unlawful," for it is submitted that if the defendant relies upon a rule of the defendant company to justify the conduct of its agents, such rule should be pleaded.

4. Because it was error to charge the jury that the depot agent had the right to make the rules governing his station, for it is submitted that such rules, to affect the public, must be something more than a rule of the agent; it must be shown that it was a rule promulgated, or at least ratified, by the defendant.

5. Because a regulation adopted by a railroad agent in his own mind, without showing for what time it is to apply, or that it is to be regularly enforced at all, and without any evidence of its being posted, or public notice of the same being given, is an unreasonable rule, and his honor, the presiding judge, erred in not so charging; and he also erred in charging that such regulation would be reasonable.

6. Because his honor, the presiding judge, erred in refusing to charge the plaintiff's first, second, and third requests to charge.

7. Because he erred in charging the defendant's first request and the second request as modified.

8. Because his honor erred in charging the defendant's third request, for, under the evidence of this case, the plaintiff had a lawful right in the "waiting room" for the purpose of purchasing a ticket, and while in there for that purpose, she had the right to disregard the agent's request to leave the room.

9. A room to be equal in accommodations with another, in which chewing and smoking are not allowed, must be exempt by rule from chewing and smoking in it. It is not enough that it so happened that neither is being done while the passenger is in the room, to declare, for that reason, that the rooms are equal in accommodation. The true test is, are the regulations for the convenience, conduct, and order the same, or different for the two rooms? And if the regulations are different, then the rooms cannot be said to be equal in accommodation; and his honor erred in not so charging. He also erred in charging the jury, that they might judge of the equality of the accommodations of the rooms, from the fact, whether or not smoking or chewing were going on in the room at the time plaintiff was ordered into said room.

Exceptions 1 and 3 raise a question of evidence, whether, under the state of the pleadings, proof was admissible, that there was a rule of procedure in the depot at Graniteville as to the place where tickets were sold to different persons. As we understand it, the point is, that testimony to prove the existence of such a rule was inadmissible under the "general denial," being, as alleged, in the nature of a defence of confession and avoidance, which must be pleaded specially. Our Code of Procedure does not recognize special pleas. It allows only one form of action, and special pleas are not admitted. But if it were otherwise, I do not think that this is a case for such a plea. The action is not against Fishburne, the party who, as alleged, committed the wrong complained of, but against D. H. Chamberlain, as receiver of the South Carolina Railway, the purpose being to make him or the company he represents liable *civiliter* in damages for the act of the depot agent at Graniteville. I cannot see why Mr.

Chamberlain, in a civil proceeding, should be required to file "a confession" of an act he never committed. Under the Code, the general denial puts in issue every fact alleged in the complaint, and the plaintiffs here alleged that Mr. Fishburne was the depot agent of the company at Graniteville; that the plaintiff Rebecca applied to him to sell her a ticket, but he refused, and ordered her to go into the room allotted to "male passengers," and upon her refusal to do so, the agent came into the room and approached the said Rebecca, and unlawfully, in a rude and violent manner, ordered her to get out of said room, and upon her refusal to leave, caught hold of her, and, in a rough and unlawful manner, forced the said plaintiff to leave the room, &c. The denial of the defendant put the allegations in issue, and he offered evidence tending to show that the agent Fishburne did *not* use force; that the room she was in was *not* "the ladies' room," but one for the use of the *"whites,"* and that the other room referred to was not for "males," but for "blacks" of both sexes; and that there was a regulation so designating the rooms, of which she was informed. We concur with the Circuit Judge, that this was fairly in response to the issue and testimony of the plaintiff, and in rebuttal of the allegation of unlawful ejectment.

Exceptions 2, 4, 5, 6, 7, and 8, including the refused requests to charge, may all be considered together, as, in different forms, they are all upon the same general subject, and make the point, that it was error to charge that a depot agent, in charge of the houses, offices, and grounds connected with the depot, has the power, as incident to his position, without the express authority or ratification of his company, to make a regulation requiring white and colored persons to purchase their tickets in different rooms, without posting it or giving previous formal notice. The judge did substantially so charge; but he left it to the jury to decide whether Fishburne, the agent, was in unrestricted control of the depot; whether he established such a regulation as to his manner of doing business; whether he informed the plaintiff of the existence of such a regulation, and whether equal accommodations were provided in both rooms.

The statute law of the State does not undertake to fix the conduct of business at railroad depots, but, after announcing certain general principles, leaves the details to the officers of the company as long as they make reasonable regulations. Section 1494 of the General Statutes declares that "railroads shall erect and keep at every office where tickets are sold two good rooms or apartments of reasonable size for the amount of travel at such office, which shall be provided with comfortable seats, for the accommodation of passengers," &c. Section 1502, General Statutes, provides "that every railroad company shall provide reasonable accommodations for the convenience and safety of passengers." And by section 1516, "Station or depot agents are hereby declared conservators of the peace, and they and each of them shall have the same power to make arrests that a constable now has," &c.

We think the authorities cited show conclusively that it is settled that depot agents have the power, as incident to the office, to make reasonable regulations as to the conduct of business at their depots respectively, unless restricted, limited, or controlled in that respect. See 1 Redf. Rail., sec. 2 (5th edit.); *Commonwealth* v. *Power*, 7 Metc., 596, reported in 41 Am. Dec., 465. This last case is so precisely in point, and so full, that we ask indulgence for giving a larger extract from the judgment of Chief Justice Shaw than is usual. He said: "The court are of opinion that the railroad corporation, both as the owners and proprietors of the houses and buildings connected with the railroads, and as carriers of passengers, have authority to make reasonable and suitable regulations in regard to passengers intending to pass and repass on the road in the passenger cars, and in regard to all other persons making use of such houses and buildings. This authority is incident to such ownership of the real estate, and to their employment as passenger carriers; and all such regulations will be deemed reasonable which are suitable to enable them to perform the duties they undertake, and to secure their own just rights in such employment, and also such as are necessary and proper to insure the safety and promote the comfort of passengers. * * * We are also of opinion that the power which the

company has to regulate their several depots they may dele-gate to suitable officers. Indeed, it is the only mode in which a corporation can exercise their powers. And when they have appointed a superintendent, with authority, by himself and his assistants, to have charge of the depot and manage its concerns, it is incident to this authority to exclude, or direct the exclusion of, persons who persist in violating the reasona-ble regulations prescribed, and thereby interrupt the officers and servants of the company in the discharge of their respect-ive duties. * * * That this power and authority of the corporation extended to the reasonable regulation of the con-duct of all persons using the railroad, or having occasion to resort to the depots for any purpose; that this power was pro-perly to be exercised by a superintendent adapting his rules and regulations to the circumstances of the particular depot under his charge; and that it was not necessary that such regulations should be prescribed by by-laws of the corpora-tion; that the opening of depots and platforms for the sale of tickets, for the assembling of persons going to take passage or landing from the cars, amounts in law to a license to all per-sons, *prima facie*, to enter the depot, and that such entry is not a trespass; but it is a license *conditional*, subject to useful and reasonable regulations; and on non-compliance with such regu-lations, the license is revocable, and may be revoked, either as to an individual or as to a class of individuals, by actual or constructive notice to that effect," &c.

To this case of *Power*, as reported in 41 Am. Dec., *supra*, there is a note upon the kindred subject of railroad cars for the races, as follows: "A rule providing for the separation of white and colored passengers, by seating them in different cars, or in different parts of the same car, is, in the absence of any statute to the contrary, undoubtedly reasonable, if it is for the accommodation of the passengers generally, and if owing to a repugnance between the races, a promiscuous seating of persons belonging to each is likely to promote tumult or disorder, pro-vided that the accommodations afforded to each are substan-tially equal. In the case of *Heard* v. *The Georgia R. R. Company*, 1 Inter-State Com. Rep., 426, the law is stated as follows:

35—38

"Separation of white and colored passengers paying the same fare is not unlawful, if accommodations equal in all respects are furnished to both, and the same care and protection observed. Circumstances and conditions may exist to justify such separation, and it may be in the interest of both that it should be done."

As to exception 9, we cannot say that the judge committed error in holding that, if no chewing and smoking were going on at the time in the room to which the plaintiff, Rebecca, was directed, the mere circumstance that there had been at some time chewing and smoking in that room, and not the other, was not conclusive of the question whether the accommodations of the two rooms "were substantially equal."

The judgment of this court is, that the judgment of the Circuit Court be affimed.